# Applicability of the Davis-Bacon Act to the Veterans Administration's Lease of Medical Facilities

The Attorney General has authority to review legal determinations made by the Secretary of Labor under the Davis-Bacon Act.

A lease of a privately owned facility is not a "contract for construction of a public building" within the meaning of the Davis-Bacon Act. The mere fact that a lessor undertakes construction in order to fulfill its obligations is insufficient to convert a lease into such a contract.

June 6, 1988

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
VETERANS ADMINISTRATION

This memorandum responds to the Veterans Administration's December 16, 1987, request for an opinion on the applicability of the Davis-Bacon Act ("the Act") to the lease of a privately owned facility by the Veterans Administration.

## I. Background

The Veterans Administration ("VA") is authorized to lease space that the Administrator of Veterans Affairs considers necessary for use as a medical facility. 38 U.S.C. § 5003. Pursuant to that authority, the VA entered into a lease to obtain space for an outpatient clinic in Crown Point, Indiana. On June 10, 1986, and again on July 25, 1986, the President of the Building and Construction Trades Department, AFL-CIO, requested a ruling from the Department of Labor's Wage and Hour Administrator that the Davis-Bacon Act—which applies to certain "contract[s] . . . for construction . . . of public buildings"—be applied retroactively to the Crown Point lease.

In a decision dated August 15, 1986, the Administrator advised the VA that the Davis-Bacon Act was applicable to the Crown Point lease, because in this instance the lessor had chosen to construct a new facility to lease to the VA, and

---

[1] In soliciting offers for the lease, the VA did not specify that it was seeking either a new or a preexisting facility, and indeed the VA's Solicitation for Offers contemplated that an offeror with a suitable existing building could be awarded the lease E g § 16 ("Preference will be given to offerors of space in buildings on, or formally listed as eligible for inclusion in, the National Register of Historic Places and to historically significant buildings in historic districts listed in the National Register."); § 33 ("Buildings which have incurable functional obsolescence . may be rejected by the Contracting Officer."), § 97 (dealing with asbestos in "existing buildings" offered for lease) As stated by the Veterans Administration

> The VA's decision to lease space for the Crown Point clinic was based on an economic cost analysis performed prior to the issuance of the [solicitation for offers]. This analysis is used to determine the least costly method of providing the necessary space to accommodate veterans' medical care needs Here, leasing proved to be the least costly alternative . . When this [solicitation] is prepared, the type

89

therefore "the nature of the agreement [is] a contract for construction." *Id.* at 1.[1]
The Administrator reaffirmed that ruling on November 13, 1986. The Department of Labor's Wage Appeals Board upheld the Administrator on June 26, 1987, stating that even though "the principal purpose of the VA contract is to lease a facility," "[t]he lease aspect of the negotiations between the VA and the developer does not in any way change the construction nature of the contract." *In re Applicability of Davis-Bacon Act to Lease of Space For Outpatient Clinic, Crown Point, Indiana,* WAB Case No. 86–33, at 6, 4 (June 26, 1987).

The VA thereafter expressed its disagreement with that interpretation of the Davis-Bacon Act, and announced its intention to seek the opinion of the Attorney General as to the applicability of the Davis-Bacon Act to a lease by the VA, pursuant to 38 U.S.C. § 5003, of privately owned and privately constructed facilities.[2]

---

[1] (. . . continued)

> of space that will be offered, i.e , space already in existence, presently under construction, or in a facility that will be constructed, cannot be anticipated.

Letter for Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, from Donald L Ivers, General Counsel, Veterans Administration at 7 (Dec. 16, 1987) ("Ivers Letter"). Although the lessor of the Crown Point facility chose to construct a new facility, the lessor was clearly not required to do so Legal and equitable title will remain in the lessor throughout the term of the lease, and the lessor is free to sell the building or to lease it to someone else at the conclusion of the lease. Lease payments began "after the VA [took] occupancy of the leased premises," and will continue "on a monthly basis in arrears " *Id* at 6.

The Department of Labor suggests that there was "a lump sum payment by the VA to the contractor of $440,128.16 for . . construction" of certain "Schedule B" items. Letter for Charles J Cooper, Assistant Attorney General, Office of Legal Counsel, from George R. Salem, Solicitor of Labor at 8 (Apr. 22, 1988) ("Salem Letter"). This assertion would appear to conflict with the VA's statement that "Federal funds [were] not provided for the purposes of construction" at Crown Point. Ivers Letter at 6.

Whether any or all of these "Schedule B" items constitute construction is a factual issue which was neither relied upon by the Department of Labor's Wage Appeals Board in its Crown Point decision, nor directly presented to us for resolution There is nothing precluding lease payments, or portions of lease payments, from being paid as a lump sum, rather than over time. Indeed, under the VA's solicitation for offers, offerors were required to provide alternate proposals, calculating the "Schedule B" items both as "lump sum payment not to be included in the rental rate," and as a rental rate "which included the cost of these items." The VA reserved to itself the right to select the "most favorable" option. Solicitation for Offers, § 10. Moreover, we note that even under the regulations purporting to cover "nonconstruction contracts"—and even assuming that those regulations apply to leases—there is an exception to coverage for construction work that "is incidental to the furnishing of supplies, equipment, or services" or that is "so merged with nonconstruction work" as to be incapable of being "segregated" as a separate contractual requirement. 48 C.F.R § 22.402(b). *See also infra* note 12.

Thus, while we do not here attempt to resolve this factual issue, considerable evidence exists to support the VA's position that the payments contemplated for "Schedule B" items were not for construction. In any event, it is clear that even if the Department of Labor's factual contention regarding the nature of the "Schedule B" items is correct, application of Davis-Bacon requirements would be limited under the statute to the payments (or some part thereof) attributable to the "Schedule B" items.

[2] Both the General Services Administration and the Department of Defense have submitted written statements supporting the VA's interpretation of the Davis-Bacon Act. Letter for Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, from Clyde C. Pearce, Jr , General Counsel, General Services Administration (Dec 31, 1987); Letter for Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, from Kathleen A. Buck, General Counsel, Department of Defense (May 5, 1988) ("Any expansion of the Davis-Bacon Act beyond its express language should be done by Congress, not by agency interpretation.")

## II. Discussion

A. *Jurisdiction*

Before turning to the substantive issues presented by the VA's request, we address a threshold jurisdictional matter: whether the Attorney General, and hence this Office, has authority to render an opinion on the proper interpretation of the Davis-Bacon Act at the request of the VA. The Department of Labor, by letter dated April 22, 1988, has suggested that Executive Order No. 12146, 3 C.F.R. 409 (1979), governs the issue of the Attorney General's authority to give an opinion in this matter, and that that Executive Order, by its terms, prohibits the Attorney General from responding to the VA's request.[3]

As an initial matter, the Executive Order is not the sole basis for the Attorney General's jurisdiction over this matter. Congress has authorized the Veterans Administration to "require the opinion of the Attorney General on any question of law arising in the administration of the Veterans Administration." 38 U.S.C. § 211(b). The applicability vel non of the Davis-Bacon Act to leases entered into by the VA is clearly a "question of law arising in the administration of the Veterans Administration"; among other things, the interpretation given to the Davis-Bacon Act may determine the required terms of certain contracts entered into by the Administrator.[4] Accordingly, the VA has statutory authority under section 211 to request an opinion from the Attorney General, and the Attorney General has statutory authority to respond to that request.[5]

Moreover, contrary to the Department of Labor's suggestion, Executive Order No. 12146 also authorizes the Attorney General to issue an opinion in this matter. The Executive Order provides in part:

> Section 1–401. Whenever two or more Executive agencies are unable to resolve a legal dispute between them, including the question of which has jurisdiction to administer a particular program or to regulate a particular activity, each agency is encouraged to submit the dispute to the Attorney General.

---

[3] Salem Letter at 1–6.

[4] *See Application of the Davis-Bacon Act to Urban Development Projects that Receive Partial Federal Funding*, 11 Op. O.L.C. 92, 95 (1987) (interpretation of statute that will affect contracts entered into by department is a legal question "arising in the administration of [the] department" within meaning of identical language contained in 28 U S C. § 512).

[5] *Accord, id.* at 94–95 (construing identical statutory language contained in 28 U S.C § 512 to mean that the requesting agency "is entitled by law to the opinion of the Attorney General")

The Department of Labor seeks to distinguish the Cooper Opinion, by noting that the Attorney General exercised jurisdiction therein pursuant to 28 U.S.C. § 512, whereas in the present instance 28 U S.C § 512 has no application—implying that if 28 U.S.C § 512 did apply, the Department would not contest the jurisdictional issue. Salem Letter at 1 n.1. The pertinent language of 28 U S C. § 512, however, is identical to the language of 38 U.S.C. § 211, which is applicable here. The Department of Labor does not address 38 U.S.C. § 211 in the Salem Letter.

The Department of Labor interprets section 1–401 to mean that the Attorney General may exercise jurisdiction only when the dispute is "voluntarily submitted by the disagreeing agencies," *i.e.*, only when both (or all) agencies involved agree to submit the dispute to the Attorney General. Because in this case the Secretary of Labor "does not submit this matter for resolution by the Attorney General," the Department urges that section 1–401 may not serve as a basis for the Attorney General's jurisdiction.[6]

We believe that the Department's interpretation is incorrect. Section 1–401 specifically states that *each* agency is encouraged to submit any such dispute to the Attorney General: there is no requirement that *every* agency involved in a dispute request an opinion from the Attorney General. Thus, section 1-401 entitles any agency, by itself, to request the Attorney General to resolve a legal dispute with another agency—as the VA has done here. The interpretation offered by the Department of Labor is contradicted by the plain language of the Order itself.

Further, that interpretation would defeat the purposes of the Order by granting any agency a "veto" over the Attorney General's section 1–401 jurisdiction, thereby insuring that some disputes could never be resolved within the terms of the Executive Order. Nothing in the Executive Order supports such an anomalous result.[7]

The Attorney General's statutory authority over all litigation in which a United States agency is a party provides an additional basis for the exercise of jurisdiction here.[8] As we noted in a prior opinion, in response to a similar challenge to the Attorney General's jurisdiction:

> [T]he Attorney General's authority to give his opinion . . . is also confirmed by 28 U.S.C. 516 and 5 U.S.C. 3106. The former reserves generally to the Attorney General the conduct of all litigation in which the United States, an agency, or officer thereof is a party. The latter generally prohibits the head of an Executive department from employing an attorney for the conduct of litigation in which the United States, an agency, or an employee thereof is a party, requiring instead that the matter be referred to the Department of Justice. Both provisions admit of exceptions only when "otherwise authorized by law." Although Congress has established "a solicitor for the Department of Labor," 29 U.S.C. 555, the solicitor has no general litigating authority; his authority is narrowly drawn, see 29 U.S.C. 663 (representation of the Secre-

---

[6] Salem Letter at 2

[7] *See also* 11 Op. O L.C. at 97 (reaffirming the authority of the head of any executive department, acting alone and without obtaining the consent of any other agency that may be a party to a dispute, to request an opinion from the Attorney General under 28 U S C § 512). Executive Order No 12146 "expands the authority of the Attorney General to render legal opinions beyond his statutory obligation," *id* , further suggesting that no "one agency veto" provision should be read into section 1–401.

[8] Given the clear jurisdictional bases for the Attorney General's opinion in this matter, we need not consider whether section 1–401 of Executive Order No. 12146 provides further authority for the Attorney General to respond to the VA's request. *See also* 11 Op. O.L.C at 97–98

92

tary of Labor in occupational safety and health litigation); 29 U.S.C. 1852(b) (litigation for the protection of migrant and seasonal workers); 30 U.S.C. 822 (representation of the Secretary of Labor in mine safety and health litigation), and nevertheless "subject to the direction and control of the Attorney General." *Id.* The Attorney General's authority to conduct litigation on behalf of the United States necessarily includes the exclusive and ultimate authority to determine the position of the United States on the proper interpretation of statutes before the courts.[9]

Thus, we conclude that the Attorney General has the authority to decide the legal question presented by the VA.[10]

## B. *Substantive Issues*

The Davis-Bacon Act, at 40 U.S.C. § 276a(a), provides in part:

The advertised specifications for every contract in excess of $2000, to which the United States . . . is a party, for construction, alteration, and/or repair . . . of public buildings or public works of the United States . . . and which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village . . . in which the work is to be performed . . . .

The language of the statute is both plain and precise. Section 276a(a) applies only to certain contracts to which the United States "is a party," and that are "for con-

---

[9] *Id.* at 98.

We note that on October 20, 1987, the AFL-CIO's Building and Construction Trades Department filed suit to compel the VA to comply with the Department of Labor's Wage Appeals Board's June 26, 1987 decision *Building and Construction Trades Department v. Turnage*, 705 F. Supp. 5 (D.D.C. 1988).

The Department of Labor implicitly challenges the Attorney General's litigating authority as a basis for jurisdiction here, by suggesting that the interpretation of the Davis-Bacon Act is not an issue in the pending litigation. Salem Letter at 6. That suggestion is incorrect· resolution of the conflicting interpretations of the Davis-Bacon Act will clearly affect the conduct of the litigation. For example, should we conclude that the VA's interpretation of the Davis-Bacon Act is incorrect, that decision would be binding upon the VA and the litigation would be mooted. *See, e g*, Executive Order No 2877 (May 31, 1918).

[10] As set out above, the Attorney General is authorized to provide opinions on "questions of law" and to resolve "legal disputes" within the executive branch *E.g*, 38 U.S C § 211, Executive Order No. 12146. How far that authority permits the Attorney General to resolve factual questions necessarily incident to a properly presented legal dispute need not be addressed here As we conceive the question posed by the VA, our analysis does not turn upon the particular facts surrounding the Crown Point lease; rather, our opinion is addressed to the question of Davis-Bacon coverage of leases, as a matter of statutory construction.

struction, alteration, and/or repair . . . of public buildings." The question presented here is whether the lease of a privately owned facility is a "contract . . . for construction . . . of [a] public building" within the meaning of the Act. We think the plain language of section 276a(a) demonstrates that it is not.

We start with the well-established principle that "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985); *see American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982). Although the Davis-Bacon Act is a remedial statute, to be construed liberally, the carefully drawn language of section 276a(a) limits its application to "contract[s] . . . for construction"; there is nothing in the language of the statute to suggest that it was meant to extend beyond construction contracts to leases, or to construction undertaken by private entities in order to enter into or fulfill a lease agreement with the government.[11]

That the words "contract . . . for construction" in the Act were meant to have their plain meaning was confirmed by Attorney General Cummings, who reviewed the legislative history of the Davis-Bacon Act, noted that the Act was *"restricted by its terms* to 'construction, alteration, and/or repair'" and concluded that the Act applied to "buildings erected with funds supplied by the Congress." 38 Op. Att'y Gen. 229, 233 (1935) (emphasis added). Similarly, Attorney General Rogers noted that the House Committee on Public Works characterized the Davis-Bacon Act as "appl[ying] to all direct Federal construction." 41 Op. Att'y Gen. 488, 495 (1960).

A contract to lease a privately owned facility, however, is not a contract to erect buildings "with funds supplied by the Congress," nor does such a lease involve "direct Federal construction." *See* 38 Op. Att'y Gen. at 233; 41 Op. Att'y Gen. at 495. Similarly, the fact that a private entity might undertake construction with private funds in order to offer the government a lease, or to fulfill lease obligations, does not make the United States a party to a contract for construction, nor does that fact convert a lease into a contract for "direct Federal construction." 41 Op. Att'y Gen. at 495. More specifically, construction undertaken by a private party, with private funds, in order to satisfy government specifications and thus to enable the private party to fulfill its obligations as a lessor to the government, or to enter into a lessor relationship with the government, is not construction pursuant to a "contract . . . for construction" to which "the United States . . . is a

---

[11] Congress has not only crafted 40 U.S.C. § 276a(a) to exclude leases, but has also distinguished between construction contracts and leases in the statute authorizing the VA to enter into leases. Thus, 38 U.S C. § 5003(a)(1) authorizes the VA to "construct or alter" any medical facility; 38 U.S.C. § 5003(a)(2) separately authorizes the VA to acquire such facilities "by lease." The statute was comprehensively amended in 1979 in part "[t]o help assure the timely completion of leasing arrangements." S. Rep. No. 100, 96th Cong., 1st Sess. 58 (1979), *reprinted in* 1979 U.S.C.C.A.N. 169, 212.

party" as required by the language of the Act. Accordingly, such privately financed construction is not covered by the Act.[12]

The Comptroller General has reached the same conclusion, holding that the Davis-Bacon Act does not apply to the construction of buildings in accordance with government specifications, for lease by the government. The Comptroller General acknowledged the "basic distinction which exists between the procurement of a right to use improvements, even though constructed for that particular usage, and the actual procurement of such improvements." In light of that distinction, the Comptroller General held that "the mere fact that construction work is prerequisite to supplying a public need or use does not give such work a Davis-Bacon status." 42 Comp. Gen. 47, 49 (1962).[13]

The language of section 276a(a) also contrasts sharply with the language of several similar statutes under which leases are explicitly subject to the prevailing wage requirements of the Davis-Bacon Act. For example, 39 U.S.C. § 410(d)(1) states explicitly that certain "lease agreement[s]" entered into by the Postal Service shall be covered by prevailing wages established under section 276a.[14] Similarly, 40 U.S.C. §§ 801–851, authorizing the lease of the Union Station Building by the Federal Government, specifically provide that alterations to the leased facility shall be subject to the prevailing wage requirements of the Davis-Bacon Act. 40 U.S.C. § 808. Additionally, 42 U.S.C. § 1437j also specifically lists "contract[s] for . . . lease" as being subject to those requirements. That Congress in these statutes felt called upon to specify that leases were to be covered by the Davis-Bacon Act indicates not only that Congress knows how to insure that leases are covered by the Davis-Bacon Act in those few situations where it so chooses, but also that section 276a(a) by itself does not include leases.[15]

---

[12] We note that the various regulations cited in the Salem letter are not inconsistent with this conclusion. Regulations promulgated under the Davis-Bacon Act that purport to apply the Act to "nonconstruction contracts," 48 C.F.R. § 22.402(b), do not embrace lease agreements. Similarly, 29 C.F.R. § 4.116(c)(2), promulgated under the Service Contract Act and dealing with application of the Davis-Bacon Act to contracts for services, does not apply here. 29 C.F.R. § 5 2(k) is merely an interpretation of "public building" and "public work" as those phrases appear in the Act, and makes no reference to leases. Moreover, the regulation itself provides that those terms include only construction work "carried on directly by authority of or with funds of a Federal agency." It seems plain that even if the regulation applied to leases, the lease by the government of a privately constructed and owned facility does not constitute construction work carried on directly by authority of a Federal agency, or with the funds of a Federal agency.

In any event, any interpretation of these regulations as extending to leases would result in an impermissible conflict between the regulations and the plain language and intent of the statute itself, for the reasons discussed above. *See also Chevron U S.A v Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43 (1984)

[13] The Department of Labor states with respect to this decision that "[i]t is the position of the Department that the Comptroller General lacks the authority to issue opinions regarding the proper application of the Davis-Bacon Act." Salem Letter at 9 n.7. The Comptroller General's decision, however, was issued in response to a request from the Department of Labor. Moreover, whatever the merits of the Department's challenge to the Comptroller General's authority, we refer to the Comptroller General's opinion not as binding precedent but rather as additional confirmation for our own conclusions.

[14] When Congress amended 39 U.S.C. § 410(d) to make the Davis-Bacon Act applicable to certain Postal Service leases, Congress acknowledged that that application was an extension of Davis-Bacon coverage. H.R. Rep. No. 1104, 91st Cong., 2d Sess. 27 (1970), *reprinted in* 1970 U.S.C.C.A.N. 3649, 3675

95

## Conclusion

In light of the language and legislative history of the Davis-Bacon Act, the distinction that Congress has drawn between leases and contracts for construction in numerous statutes, including the statute governing the VA's leasing authority, and several opinions of the Attorney General and Comptroller General, we conclude that the coverage of the Davis-Bacon Act does not extend to leases. The mere fact that a lessor undertakes construction in order to fulfill its lease obligations is insufficient to convert a lease into a "contract . . . for construction" within the meaning of the Act.

CHARLES J. COOPER
*Assistant Attorney General*
*Office of Legal Counsel*

---

[15] Pending legislation in Congress also provides some minor support to the conclusion that the Davis-Bacon Act does not apply to leases. The "Davis-Bacon Amendments of 1987" would amend current 40 U.S.C § 276a to provide that "a contract for construction . . . includes a contract for the lease of a facility which is to be constructed . . . if construction . . . is required for fulfillment of the contract." Although it is quite true that "[t]he views of members of a later Congress . . are entitled to little if any weight" in interpreting a statute, *Teamsters v United States*, 431 U.S. 324, 354 n.39 (1977), it is nonetheless the case that in enacting a statute, Congress is presumed to intend to change existing law, rather than to commit a meaningless act.

The Department of Labor suggests that "there is no indication that Congress has ever dealt with this issue [of coverage of leases by the Davis-Bacon Act]," because Congress has not, for example, "pass[ed] an amendment providing that leases are not subject to the Act." Salem Letter at 10. Congress, however, need not pass such negative amendments to make its intent clear: the very words of the statute that Congress did choose to pass are sufficient to make it clear that the Act does not cover leases